IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

| | | |
|---|---|---|
| JONATHAN JAY JONES | § | |
| VS. | § | CIVIL ACTION NO. 1:20-cv-156 |
| JOE BERRETH, ET AL. | § | |

REPORT AND RECOMMENDATION
<u>OF UNITED STATES MAGISTRATE JUDGE</u>

Jonathan Jay Jones, an inmate confined within the Texas Department of Criminal Justice, Correctional Institutions Division, proceeding *pro se*, filed this civil rights lawsuit pursuant to 42 U.S.C. § 1983 against Joe Berreth, Tamiya Bridges, Heather Carpenter, Nicole Davis and Michael Simon. This matter was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636 for findings of fact, conclusions of law, and recommendations for the disposition of the case.

Factual Allegations

Plaintiff states that he was convicted of a criminal offense in 1994 and sentenced to 99 years of imprisonment. At trial, Plaintiff was acquitted of the charge of aggravated sexual assault of a child, but convicted of the charge of indecency with a child. He was released on parole on April 13, 2018, and sent to the Beaumont Center Halfway House (the "Center"). Plaintiff states the Center is a sex offender treatment facility. As a result of his conviction, Plaintiff was required to register with the Beaumont Police Department as a sex offender and attend weekly sex offender treatment classes taught at the Center by Defendant Simon, a therapist.

Plaintiff asserts that when he was released in 2018, he was required to take a sexual history polygraph examination, to be followed by annual maintenance examinations. He appeared at the parole office on November 19, 2019, for his first annual maintenance examination, which was administered by Defendant Berreth, a new polygraph examiner with the parole office. Plaintiff states that prior to this examination he was not able to receive prescribed mental health medications because the clinic that had prescribed the medication had been closed due to flooding. He had also

been injured in a bicycle accident and his sister and best friend had passed away. As a result, Plaintiff states he was not in good condition mentally at the time of the examination.

Prior to the examination, Defendant Berreth provided Plaintiff with a paper to sign without giving him time to read it. The document stated that Plaintiff agreed to take the polygraph examination. Plaintiff alleges that before the examination began, he told Defendant Berreth about not receiving his medication and his injury.

During the examination, Defendant Berreth commented on Plaintiff's long hair and fluffy white beard and asked him if anyone ever called him Jesus. Plaintiff replied that he had not been called that. He also stated that when he recently passed three young men on his bicycle, one of them pointed at him and said, "Look, it's Santa." After the examination was over, Defendant Bridges, a parole supervisor, entered the room and Defendant Berreth told her Plaintiff had failed the examination. Defendant Berreth also twisted what Plaintiff had told him and falsely accused Plaintiff of dressing up like Santa and going to schools to seduce children. Defendant Bridges believed the false accusation and placed Plaintiff on a list of people who were not allowed to leave the Center.

The following Monday, Plaintiff states he reported to the small parole office behind the chow hall at the Center. Defendant Davis, his former parole officer, and Defendant Carpenter, his new parole officer, were there. Defendant Davis stated she had seen the tape of the polygraph examination and instructed Plaintiff to shave his beard. She stated she did not want him going around looking like Santa around children close to Christmas. Defendant Carpenter concurred with this statement. Plaintiff states he immediately shaved his beard. The statement made by Defendant Davis was included in Plaintiff's records.

Plaintiff asserts a makeup polygraph examination was scheduled for January 17, 2020. He states he did not sleep because he knew Defendant Berreth was trying to get his release on parole revoked because he found Plaintiff's 1994 conviction so offensive. Plaintiff alleges that at this examination, Defendant Berreth again had him sign a paper without giving him enough time to read

2

it. He states that during the examination, Defendant Berreth had the victim's statement regarding the 1994 conviction in front of him.

After the examination, Defendant Berreth called in Defendant Bridges and accused Plaintiff of downloading child pornography. Plaintiff states he has never done this and does not know how to operate a smart phone or a computer. However, based upon Defendant Berreth's statements, Defendant Bridges became convinced Plaintiff had viewed the pornography and documented her belief. He asserts that since Defendant Berreth began working at the parole office, the number of individuals failing their polygraph examinations has greatly increased.

Plaintiff contends that even though she was not present at this examination, Defendant Carpenter stated in Petitioner's revocation report that Plaintiff admitted viewing child pornography. She also stated Plaintiff was a threat to society and subsequently voted to revoke his release on parole.

Plaintiff states that after he failed the second polygraph examination, Defendant Simon removed him from the sex offender treatment class. This led to the revocation of Plaintiff's parole, based in part for failing to complete the sex offender treatment program. Plaintiff states he complained to Defendant Simon during class that Defendant Berreth was lying about him. However, Defendant Simon did not believe him and dropped him from the class.

Plaintiff's release on parole was later revoked and he was returned to prison. As relief, he seeks an order directing that his release on parole be reinstated and asks for compensatory damages.

## Standard of Review

Pursuant to 28 U.S.C. § 1915A, a district court shall dismiss a complaint filed by a prisoner seeking redress from a governmental entity or an officer or employee of a governmental entity, if the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune from such relief." A complaint may be dismissed for failure to state a claim if the plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While

a complaint need not contain detailed factual allegations, the plaintiff must allege sufficient facts to show more than a speculative right to relief. *Id*. at 555.

## Analysis

### *Heck v. Humphrey*

Plaintiff alleges that as a result of deliberately false information Defendants provided to parole and judicial authorities and as a result of Defendant Simon improperly removing him from the sex offender treatment class, his release on parole was improperly revoked. For the reasons set forth below, his request for money damages based on his allegations is barred by the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994).

*Heck* provides that in order to recover damages for allegedly unconstitutional convictions or imprisonment, or for other harms caused by actions whose unlawfulness would render a conviction or incarceration invalid, a plaintiff must prove that the imprisonment has been reversed on appeal, expunged by executive order or called into question by the issuance of a writ of habeas corpus. *Id.* at 486-87.

As a result, when a court considers a claim that a plaintiff has been improperly incarcerated, the court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of the plaintiff's confinement. If it would, the complaint must be dismissed unless the plaintiff can demonstrate that the confinement challenged has already been invalidated. *Heck*, 512 U.S. at 487. If, however, the court determines that the plaintiff's action, even if successful, would not demonstrate the invalidity of the plaintiff's confinement, the action should be allowed to proceed. *Id*.

Plaintiff contends that if parole and judicial authorities had been provided with accurate information, and if he had not been removed from the sex offender treatment class, his release on parole would not have been revoked. As a result, if Plaintiff were to receive a judgment in his favor in this lawsuit, the judgment would necessarily imply that the revocation of his release on parole was

improper and that he is wrongfully imprisoned. As Plaintiff does not state the revocation has been invalidated, he may not proceed with a claim for money damages.

*Request for Release*

In addition to damages, Plaintiff seeks an order directing that his release on parole be reinstated he be released from prison. However, such relief is only available through the filing of a petition for writ of habeas corpus. *Preiser v. Rodriguez*, 411 U.S. 475, 493 (1973).

## Recommendation

This civil rights lawsuit should be dismissed for failure to state a claim upon which relief may be granted.

## Objections

Objections must be (1) specific, (2) in writing, and (3) served and filed within 14 days after being served with a copy of this report. 28 U.S.C. § 636(b)(1).

A party's failure to object bars that party from (1) entitlement to *de novo* review by a district judge of proposed findings and recommendations, *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of unobjected-to factual findings and legal conclusions which are accepted by the district court, *Douglass v. United Servs. Auto. Ass'n.*, 79 F.3d 1415, 1429 (5th Cir. 1996) (*en banc*).

**SIGNED this the 25th day of March, 2024.**

_____
Christine L Stetson
UNITED STATES MAGISTRATE JUDGE